IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTONIO ORLANDER JERIDO, ) | |
| AIS #169480, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:09-CV-1088-MEF |
| ) | [WO] |
| ) | |
| SHERIFF WILLIAM FRANKLIN, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

In this 42 U.S.C. § 1983 action, Antonio Orlander Jerido ["Jerido"] challenges the constitutionality of actions undertaken with respect to his arrest for capital murder, first degree assault and first degree robbery on January 19, 2009.[1] Specifically, Jerido complains that Chirs Ogden, a Deputy with the Elmore County Sheriff's Department, committed perjury in affidavits submitted in support of his request for issuance of arrest warrants. *Complaint - Doc. No. 1* at 3. Jerido maintains that the alleged perjury by Ogden resulted in his illegal arrest, which he "brought to the attention of ... Sheriff Franklin and Det. Ward ... whom refused to correct this injustice." *Id*. Jerido also complains that his arrest caused him to suffer defamation of his character. *Id*. at 4. Jerido seeks compensatory and punitive

---

[1]Throughout the evidentiary materials, the plaintiff is identified as Antonio Jerido, Tonio Jerido and Tony Jerido. Any reference herein to "Antonio", "Tonio" or "Tony" is a reference to the plaintiff.

damages for the alleged violations of his civil rights.  *Id.*[2]

The defendants filed a special report, supplemental special report and supporting evidentiary materials addressing Jerido's claims for relief.  Pursuant to the orders entered herein, the court construes the aforementioned reports as a motion for summary judgment. *Order of March 10, 2010 - Doc. No. 63*.  Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[2] To the extent that Jerido seeks relief from the criminal charges for which he has been convicted, he is not entitled to this relief as "habeas corpus is the exclusive remedy for a ... prisoner who challenges" the basis for his confinement "even though such a claim may come within the literal terms of § 1983...."  *Heck v. Humphrey,* 512 U.S. 477, 481 (1994); *Edwards v. Balisok,* 520 U.S. 641, 645 (1997); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [-- now dispute --] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive the defendants' properly supported motion for summary judgment, Jerido is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces

nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not

mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Jerido fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

#### A.  Relevant Facts

On January 17, 2009, officers with the Elmore County Sheriff's Department were dispatched to a residence on Mt. Zion Road in Wetumpka, Alabama, in response to a murder, assault and robbery. Upon arrival at the scene, officers found Cornelius Wayne Gibbs dead of gunshot wounds and Darryl Benson suffering from a gunshot wound to his lower stomach area.[4] "During the initial investigation of the crime scene, 8 shell casings were discovered. They all appeared to be 9 mm." *Defendants' Exhibit H Part III - Summary of Investigative Report - Doc. No. 61-9* at 2. While working the scene of the crimes, Ogden heard "several witnesses ... saying that the Plaintiff was involved in the shooting of both victims, but no witnesses wanted to make an official statement at that time." *Defendants' Exhibit F (Affidavit of Christopher Ogden) - Doc. No. 61-1* at 3. The investigating officers invited the witnesses to make official statements at the sheriff's office. *Id*. As a result of this invitation, officers received statements from several individuals implicating Jerido in the crimes against Gibbs and Benson. *Id*.; *Defendants'*

---

[4]Darryl Benson is also identified in the evidentiary materials as Darrell Benson.

*Exhibit 1 to Ogden Affidavit (Attached Statements) - Doc. No. 61-2 at 2-8.*

On January 19, 2009, at 11:49 a.m., officer Amerson did a field interview of Charles Gibbs, the deceased victim's brother. During this interview, Charles Gibbs stated that he "had a conversation with Darryl Benson [earlier that morning while Benson was] ... in the hospital.... I was saying [to Benson] ... that I seen ... the boys that robbed y'all. I was you know that's the one that shot y'all. He said ... you wanna know something, that was them. And that was ... Tony that did it. So I said, ... you gonna tell the investigators that. He said yeah...." *Defendants' Exhibit H Part II - Statement of Cornelius Gibbs' Brother - Doc. No. 61-8* at 66 (internal quotations omitted).

Amerson then interviewed Darryl Benson at Jackson Hospital. During this interview, Benson advised Amerson that he was not certain of the identity of his shooter because the shooter's "face [was] covered.... Could have been anybody [but Tonio Jerido was] the one riding around showing his gun.... Again, um, you know, showing off a gun and stuff [that same night]. And plus, he had been saying that he was gonna rob [someone].... If it had to be anybody [who shot me] it had to be Tonio..... [I]t would [most likely] be Tonio." *Defendants' Exhibit 2 to Ogden Affidavit (Statement of Darryl Benson) - Doc. No. 61-3* at 4.

On January 19, 2009, Investigator J. T. Evans had an opportunity to speak with Keon Butler, at which time Butler "stated that he had several conversations with Antonio

Jerido on Saturday the 17th of January 2009. During one conversation Antonio told Keon that he was going to 'hit' someone and that he had been watching [this person's] house since 1:00 p.m. that day.... [I]n another call later that same date Antonio told [Butler] that a red Ford F250 had just left the victim's house and that if he hit him soon everyone [would] think who ever was in the F250 would be the ones who shot them. Antonio then said alright I'm fixing to hit him now and disconnected [the call]. [Butler] advised that Mr. Jerido told him that [Jerido] and another individual, [an individual] Jerido would not name, waited behind the [victim's] trailer for the victims to come out. [Butler] said Jerido told him that once both victims exited the trailer and began to move towards a vehicle that was parked in front of the trailer that he and the other individual came out from around the corner of the trailer. Butler also [stated] that Jerido advised him that he thought he shot [the deceased victim] twice. Mr. Butler also said later that night Mr. Jerido met him in Montgomery and gave him $2,200 in cash and said man I told you I was going to take care of you." *Defendants' Exhibit H Part II - Statement of Investigator J. T. Evans - Doc. No. 61-8* at 73.

Evans relayed this information to Ogden and Ogden obtained a statement from Keon Butler later that same day in which Butler advised Ogden that Antonio Jerido "had been calling him all day [on January 17th telling Butler] he ... been watching some guy all day, he didn't tell me who he was watching.... [Jeirdo said he was watching the guy] to rob

9

him.... [Later, Jerido] brought me twenty-two hundred dollars, about ... like ten o'clock.... [Regarding the shooting and robbery,] [Jerido]e told me that he was fixin to go in the house but when he walked up to the porch [people] was coming out so he start shooting; but he only told me that he shot the guys in the legs.... I don't know [who he shot]...." *Defendants' Exhibit 2 to Ogden Affidavit (Statement of Keon Butler) - Doc. No. 61-3* at 6. Ogden questioned Butler as to how many individuals participated in the robbery and shootings, and Butler responded that Jerido told him two people went up to the house while two others waited in the vehicle. *Id*. at 6-7. Butler also advised that Jerido "said [he waited on] a red F250 [to leave the residence] ... and when he did the murder it was ... all gonna be ... on the people that was leaving in the F250.... [Jerido] said they was coming out [of the residence] while he was walking through the woods [so he waited on them to get in the truck and leave]." *Id*. at 7.

Other individuals provided statements to police within a few hours of the shootings indicating that Jerido had previously threatened to rob and kill the deceased victim. *Defendants' Exhibit 1 to Ogden Affidavit (Attached Statements) - Doc. No. 61-2* at 2-8. These individuals also stated that Jerido possessed a 9 mm handgun on the night of the shootings. *Id*.

Upon receipt of all this information, Ogden prepared affidavits for the purpose of securing arrest warrants against Jerido for capital murder and assault. *Defendants' Exhibit*

*3 to Ogden Affidavit - Doc. No. 61-4* at 2-3.  In the affidavit seeking an arrest warrant for the capital murder of Cornelius Gibbs, Ogden referenced Benson as "another subject who was shot during the offense" and maintained that Benson "did state that [Antonio Jerido] did commit the offense.  Another witness also stated that [Antonio Jerido] committed this offense."  *Id*. at 2.  With respect to the affidavit submitted in support of an arrest warrant for first degree assault against Darryl Benson, Ogden stated that Jerido "was identified as the shooter by the victim. [Jerido] was also identified by ... another witness."  *Id*. at 3.  Based on Ogden's affidavits, a magistrate for the District Court of Elmore County issued warrants for Jerido's arrest.  *Defendants' Exhibit H Part I - Doc. No. 61-7* at 24 and 26.  Based on these warrants, Ogden arrested Jerido at 7:31 p.m. and placed him in the Elmore County Jail.  *Id*. at 17.

On July 24, 2009, a grand jury for Elmore County issued indictments against Jerido for capital murder, first degree assault and first degree robbery.  *Defendants' Exhibit 4 to Ogden Affidavit - Doc. No. 61-5* at 2-4.  On December 8, 2011, Jerido "was convicted ... of all charges, Capital Murder, Assault 1st and Robbery 1st Degree."  *Plaintiff's Notice of Information - Doc. No. 99-1* at 1.  On January 10, 2012, the court sentenced Jerido to life without parole.  *Id*.

### B.  Claims for Relief

1. <u>Perjury</u>.  Jerido alleges that Ogden committed perjury in preparing his affidavits

11

filed with the state court magistrate seeking arrest warrants. Specifically, Jerido complains that Ogden erroneously stated that Darryl Benson identified Jerido as the shooter when, in actuality, Benson "gave a statement to authorities stating that he did not see or know who shot him." *Complaint - Doc. No. 1* at 3. It is well established that 42 U.S.C. § 1983 does not authorize the assertion of a claim for damages for alleged acts of perjury during proceedings related to criminal proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 334-336, 103 S.Ct. 1108, 1115-1116 (1983) (all witnesses, including government officials, are entitled to absolute immunity from damages liability for their testimony in judicial proceedings);[5] *Freeze v. Griffith*, 849 F.2d 172, 174 (5th Cir. 1988); *Austin v. Borel*, 830 F.2d 1356, 1359 (5th Cir. 1987). Thus, the perjury claim fails to provide a basis for relief in this cause of action.[6]

2. <u>Illegal Arrest</u>. To the extent Jerido complains that Ogden subjected him to an illegal arrest, this claim is without merit. "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of

---

[5]In *Briscoe*, the Supreme Court further implied that the false testimony in and of itself does not violate an accused's constitutional rights. 460 U.S. at 327, n. 1.

[6]In addition, the court has thoroughly examined the evidentiary materials contained in the record, including carefully viewing each of the statements provided by witnesses to law enforcement officials prior to Ogden's preparing his affidavits. It is clear from this review that the affidavits contain information provided to Ogden by suspects, witnesses and law enforcement officials. Specifically, Benson identified Jerido as the shooter in a statement Benson made to the murder victim's brother – information provided to law enforcement officials by the brother. Moreover, Keon Butler also implicated Jerido as the shooter in his statements to investigators Evans and Ogden. The information set forth by Ogden in his affidavits is clearly gleaned from evidence obtained during his investigation of the murder, robbery and assault which occurred on January 17, 2009, and is not perjurious.

probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Case v. Eslinger,* 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kingsland v. City of Miami,* 382 F.3d 1220, 1226, 1232 (11th Cir.2004); *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996). Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed. *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Probable cause to arrest is present when an arrest is "objectively reasonable based on the totality of the circumstances..... This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.... Although probable cause requires more than suspicion, it does not require convincing proof ... and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th Cir.2002) (internal quotation marks and citations omitted). "[P]robable cause is a flexible, common-sense standard.... [I]t does not demand any showing that [the officer's belief that an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742

(1983).

Initially, the illegal arrest claim fails as it is undisputed that Ogden arrested Jerido pursuant to arrest warrants issued by the District Court of Elmore County, Alabama. *Defendants' Exhibit H Part I - Doc. No. 61-7* at 24 and 26. Moreover, the facts of this case demonstrate that probable cause existed for issuance of the arrest warrants and likewise justified the arrest of Jerido for capital murder, assault and robbery. In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the illegal arrest claim.

3. <u>Defamation</u>. Jerido asserts that the actions of the defendants resulted in the defamation of his character. This claim entitles Jerido to no relief as the law is well settled that a 42 U.S.C. § 1983 action cannot be predicated upon the theory of slander, defamation or libel. *Paul v. Davis*, 424 U.S. 693 (1976); *Charles v. Scarberry*, 340 Fed.Appx. 597, 599-600 (11th Cir. 2009) ("[C]laims of libel and slander do not state a violation of federal law and are not cognizable in a section 1983 civil rights action.").

4. <u>Malicious Prosecution</u>. Jerido alleges that he was subjected to malicious prosecution. *Response in Opposition to Defendants' Special Report - Doc. No. 68* at 1.

> Th[e] [Elventh] Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood [v. Kesler],* 323 F.3d [872, 881 (11th Cir. 2003)]; *accord Kjellsen v. Mills,* 517 F.3d 1232, 1237 (11th Cir.2008). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious

14

prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Wood,* 323 F.3d at 882.

To establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami,* 382 F.3d 1220, 1234 (11th Cir.2004); *Wood,* 323 F.3d 872, 881 (11th Cir. 2003). As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood,* 323 F.3d at 882. The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 831-32 (Ala.1999).

As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Brown,* 608 F.3d at 734; *Wood,* 323 F.3d at 882; *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir.2004). Consequently, the existence of probable cause defeats a § 1983 malicious prosecution claim. *Kjellsen,* 517 F.3d at 1237; *Wood,* 323 F.3d at 882.

*Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256-1257 (11th Cir. 2010) (emphasis in original).

It is undisputed that Jerido was convicted of capital murder, assault and robbery. Thus, the criminal prosecution at issue was not terminated in Jerido's favor, so he fails to meet the third requisite element of a malicious prosecution claim. *Grider*, 618 F.3d at 1256. In addition, as previously determined, Jerido's arrest occurred pursuant to properly issued warrants based on probable cause that Jerido had committed the crimes set forth in the warrants. *Infra* at 12-14. The existence of probable cause defeats a claim for malicious

15

prosecution. *Id*. Consequently, the defendants are entitled to summary judgment on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. Judgment be GRANTED in favor of the defendants.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 7, 2012, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 24th day of October, 2012.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE